
EOD
03/29/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHARLES E. WILLIS, II and | § | Case No. 09-40756 |
| MITZI S. WILLIS, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| | § | |
| LINDA S. PAYNE, Chapter 7 Trustee, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 09-4163 |
| | § | |
| CITIBANK, N.A. f/k/a Citibank Texas, | § | |
| N.A. f/k/a First American Bank, N.A., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The chapter 7 trustee seeks to recover an allegedly preferential transfer from the defendant pursuant to 11 U.S.C. § 547. The defendant denies that the challenged transfer occurred within 90 days of the debtors' bankruptcy as required by subsection (b)(2)(4)(A). This adversary proceeding is before the Court on the defendant's motion for summary judgment. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157(a)-(b) & 1334, and makes the following findings of fact and conclusions of law, *see* FED. R. BANKR. P. 7052.

### *LEGAL STANDARD*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P.

56(c)(2); FED. R. BANKR. P. 7056. Where the non-moving party bears the burden of proof, as in this case, then the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The non-movant must then present "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).

## *UNDISPUTED FACTS*

Here, the defendant's motion, the plaintiff's response, and the defendant's reply, establish the following body of undisputed facts:

1. In October 2004, Dr. Charles Willis purchased a variable annuity contract from Massachusetts Mutual Insurance Company ("MassMutual"). Page 16 of the annuity contract addressed his right to assign the contract. The annuity contract provided that any assignment must be in a form acceptable to MassMutual, or MassMutual would not be required to take notice of or responsibility for any transfer of the annuity.

2. On January 26, 2005, the debtors executed a Promissory Note in the principal amount of $960,106 payable to Citibank, N.A.'s predecessor in interest, First American Bank ("FAB"). On the same date, the debtors executed a Commercial Pledge Agreement in favor of FAB to secure their obligations under the Promissory Note. Dr. Willis also executed, among other things, an Assignment of Annuity Policy as Collateral (the "Assignment").

3. The Assignment was a form document used by MassMutual and modified to reflect the details of the transaction. The Assignment expressly stated that the annuity was to be held as collateral security. Paragraph E provided that FAB would not exercise

its right to surrender of the annuity until Dr. Willis defaulted on his obligations to FAB and FAB had provided him with 20 days written notice of its intent to exercise its rights under the Assignment.

4. On January 28, 2005, FAB presented MassMutual with an executed copy of the Assignment. MassMutual, however, refused to recognize the Assignment of the annuity to FAB because the Assignment did not have two witness signatures.

5. In March 2005, FAB merged with and into Citibank Texas, N.A. Citibank Texas, N.A. thereafter merged with and into Citibank, N.A. ("Citibank").

6. On August 9, 2007, Citibank sent the debtors a formal notice of default. On August 17, 2007, Citibank sent a letter to MassMutual. Citibank reminded MassMutual of the Assignment, which Mass Mutual had previously refused to recognize, and notified MassMutual that Citibank intended to initiate collection proceedings. Citibank did not demand surrender of the annuity, but, instead, demanded that MassMutual protect Citibank's interest in the annuity.

7. In October 2007, Citibank filed suit against the debtors in state court. Citibank sought a judgment against the debtors in the principal amount of $669,377.00. In addition, Citibank sought to "foreclose" its security interest. Citibank requested an order awarding it possession of its collateral, including the annuity.

8. The debtors answered Citibank's complaint. In their answer, the debtors specifically denied that Citibank had perfected its security interest in the annuity, among other things.

9. On February 26, 2008, Citibank sent a letter to MassMutual demanding immediate possession of the annuity. MassMutual did not transfer the annuity or its proceeds to Citibank.

10. On December 16, 2008, the state court granted Citibank's request for summary judgment in the state court action. The Final Judgment entered on December 16, 2008, awarded Citibank the principle sum of $686,445.04, plus pre-judgment and post-judgment interest, attorneys' fees, and costs of court. The Final Judgment ordered, adjudged and decreed that the "security interest" of Citibank in the Annuity, among other things, "is hereby foreclosed" and Citibank "is hereby awarded possession and delivery of the Collateral," which included the annuity. The Final Judgment further awarded Citibank all such writs and processes necessary for collection.

11. The debtors filed a petition under chapter 7 of the Bankruptcy Code on March 13, 2009 – exactly 90 days after the state court entered the Final Judgment.

12. At no time prior to the debtors' bankruptcy did FAB or Citibank file a UCC-1 financing statement as to the annuity.

13. On May 13, 2009, Citibank filed a motion seeking a determination of the applicability of the automatic stay to the annuity. Citibank took the position that the Final Judgment divested the debtors of any interest in the Annuity. The Court conducted a hearing on the motion, which the chapter 7 trustee opposed, and announced its ruling on November 9, 2009. The Court concluded that the annuity was a "payment intangible," *see* TEX. BUS. COMM. CODE § 9.102(a)(62), that Citibank became the payee under the annuity by virtue of its exercise of its rights, *see id.* at §§ 9.406 & 9.607, and, in any

event, the state court terminated the debtors' legal interest in the annuity by virtue of the Final Judgment entered prior to this bankruptcy.

14. The Court entered an order granting Citibank's motion for relief from the stay on November 9, 2009. After entry of the order, MassMutual liquidated the annuity and transferred the proceeds (in the amount of $449,267.73) to Citibank.

## *DISCUSSION*

The chapter 7 trustee brought this action to recover the proceeds of the annuity from Citibank as a preferential transfer. Sections 547(b) and 550 of the Bankruptcy Code authorize the avoidance and recovery of a transfer of "an interest of the debtor in property" *if* five conditions are satisfied and *unless* one of seven exceptions defined in §547(c) is applicable. The five characteristics of an avoidable transfer are that it (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy (or one year if the creditor was an insider at the time of the transfer); and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made. *See* 11 U.S.C. § 547(b). Section 547(g) expressly states that the debtor has the burden of proving elements of a preferential transfer under subsection (b), and the creditor or party in interest against whom recovery is sought has the burden of proving the non-avoidability of a transfer under subsection (c). *See id.* at § 547(g).

The creation of a security interest in property is considered a transfer for purposes of § 547(b) of the Bankruptcy Code. *See* 11 U.S.C. § 101(54) (broadly defining the term "transfer"). Generally, a transfer is made at the time it is perfected. *See* 11 U.S.C. § 547(e)(2)(B). According to the Bankruptcy Code, a transfer is perfected "when a creditor

on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). The primary dispute in this case is whether the transfer occurred, that is, whether Citibank became perfected, within 90 days of bankruptcy. Citibank asserts that, as a matter of law, it perfected its security interest in the annuity no later than February 26, 2008.

## Citibank's Letter Dated February 26, 2008

First, Citibank argues that it perfected its interest in the annuity by sending the letter to MassMutual on February 26, 2008, demanding surrender of the annuity. Citibank argues that it was not possible for any other creditor to obtain a superior interest in the annuity after MassMutual received Citibank's notice. Citibank argues that this is because the debtors lost all rights to the Annuity under § 9.406(a) of the Texas Uniform Commercial Code ("UCC") when Citibank sent the letter to MassMutual.[1]

Section 9.406 addresses an account debtor's discharge of its liability under a payment intangible.[2] The UCC defines a "payment intangible" as "a general intangible under which the account debtor's principle obligation is a monetary obligation." TEX. BUS. COMM. CODE 9.102(a)(61). The owner of a payment intangible may assign its interest, and the assignment is automatically perfected, if the assignment "does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding … payment intangibles." *Id*. at § 9.309(2). Otherwise, the assignee may perfect its interest by filing a financing statement just as it would for a

---

[1] The model UCC underwent substantial revision in 1999. Texas adopted changes to its UCC to conform to the new provisions, including amendments to Article 9, Secured Transactions, which governs the issue in this proceeding. *See* TEX. BUS. COMM. CODE §§ 9.101 *et seq*.

[2] In her response to Citibank's motion, the chapter 7 trustee argues that the annuity was a general intangible, not a payment intangible. She cites as support several cases decided prior to the 1999 revisions to Article 9 of the UCC. The chapter 7 trustee does not acknowledge that the 1999 revisions added a definition for payment intangibles as well as provisions specifically relating to payment intangibles.

6

general intangible. *See id.* at 9.310(a). *See, e.g., In re Newman*, 993 F.2d 90 (5th Cir. 1993) (holding that annuity was not an instrument but a general intangible); *In re Custom Coals Laurel*, 258 B.R. 597 (Bankr. W.D. Pa. 2001) (holding that annuities were general intangibles, a security interest in which could be perfected by filing a financing statement). Alternatively, if the collateral is not in the debtor's possession, § 9.313(c) provides that a secured party can perfect its interest by obtaining a record from the person in possession acknowledging that it holds possession of the collateral for the secured party's benefit. TEX. BUS. COMM. CODE 9.313(c).

Here, Citibank's interest in the annuity attached when the parties executed the loan documents. *See* TEX. BUS. COMM. CODE § 9.203(a) ("A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral"). Citibank did not file a financing statement relating to the annuity. MassMutual did not authenticate a record acknowledging that it held the annuity for Citibank's benefit, and the record is devoid of the factual allegations necessary to establish the applicability of § 9.309(2), namely, that the assignment of the annuity did not result in the transfer of a significant part of Dr. Willis' payment intangibles.

Citibank's argument that the Assignment satisfied the requirements of § 9.406 and, therefore, its February 26th letter to MassMutual perfected its interest in the annuity appears to confuse § 9.406 with § 9.313. Section 9.406, in contrast to § 9.313, does not provide an alternate avenue for perfection. Rather § 9.406 allows – but does not require – an account debtor to discharge its obligation on a payment intangible by paying an assignee. *See* TEX. BUS. COMM. CODE 9.406(a). The Court concludes that Citibank has

failed to show that its February 26th letter to MassMutual perfected its interest in the annuity as a matter of law.

**The Final Judgment**

Citibank also argues that the state court's Final Judgment establishes that it is entitled to judgment as a matter of law in this adversary proceeding. Citibank characterizes the debtors' denial that Citibank's interest in the annuity was properly perfected as an "affirmative defense." Citibank argues that the state court necessarily denied the debtors' "affirmative defense" in reaching its Final Judgment. Citibank also argues that the state court's award of possession and delivery of the Annuity to Citibank proves that the state court determined that ownership of the Annuity had already passed to Citibank.

Citibank acknowledges that the state court did not expressly address the question of perfection in the Final Judgment. Indeed, recording only perfects a transfer against certain third parties. As between Citibank and the debtors, perfection was unnecessary, and Citibank could enforce the collateral agreements and assignments regardless of perfection. Citibank did so. The state court was not required to and did not determine whether Citibank had perfected its interest in the Annuity prior to bringing suit.

Collateral estoppel or, in modern parlance, issue preclusion applies when (1) the issue at stake in the pending litigation is the same as the issue in the initial litigation; (2) the issue was actually litigated; and (3) the determination of the issue in the initial litigation was a necessary part of the judgment. *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir. 2005). Offensive collateral estoppel requires a fourth equitable element that there exists "no special circumstance that would render preclusion inappropriate or

8

unfair." *Copeland v. Merrill Lynch & Co. Inc.,* 47 F.3d 1415 (5th Cir. 1995). Here, Citibank has not established any of the elements required for issue preclusion. The disputed issue in this proceeding is perfection, which was not at issue or actually litigated in the prior litigation, and the parties are not the same. The Court, therefore, concludes that the Final Judgment does not establish as a matter of law that Citibank perfected its interest in the annuity more than 90 days prior to the debtors' bankruptcy.

## *CONCLUSION*

For the foregoing reasons, the Court concludes that Citibank has failed to show that it is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Citibank's Motion for Summary Judgment is hereby **DENIED.**

Signed on 03/29/2011

*Brenda T. Rhoades*           SD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE